UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RHIANA J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          No. 1:18-cv-03147-JRS-MPB |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Rhiana J. protectively filed for supplemental security income ("SSI")

from the Social Security Administration ("SSA") on January 13, 2015, alleging an

onset date of June 1, 2001. [ECF No. 10-2 at 17.] Her application was initially denied

on March 17, 2015, [ECF No. 10-4 at 2], and upon reconsideration on July 23, 2015,

[ECF No. 10-4 at 11]. Administrative Law Judge Jody Hilger Odell (the "ALJ")

conducted a hearing on April 20, 2017. [ECF No. 10-2 at 35-56.] The ALJ issued a

decision on October 6, 2017, concluding that Rhiana J. was not entitled to receive SSI.

[ECF No. 10-2 at 14.] The Appeals Council denied review on August 20, 2018.[2] [ECF

No. 10-2 at 8.] On October 11, 2018, Rhiana J. timely filed this civil action asking the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Rhiana J.'s representative submitted a second statement of errors to the Appeals Council that was dated August 17, 2018, [ECF No. 10-6 at 80-81], which appears to have not been considered prior to the Appeals Council's initial notice denying review, [See ECF No. 10-2 at 11]. On October 22, 2018, the Appeals Council issued a second notice denying review that considered the alleged errors. [ECF No. 10-2 at 2-6]

1

Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [ECF No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton,* 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating the following, in sequence:

(1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for

further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Rhiana J. was 23 years of age at the time she applied for SSI. [ECF No. 10-5 at 2.] She has completed high school with a history of special education and had never worked. [ECF No. 10-6 at 7.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Rhiana J. was not disabled. [ECF No. 10-2 at 28.] Specifically, the ALJ found as follows:

- At Step One, Rhiana J. had not engaged in substantial gainful activity[4] since January 13, 2015, the application date.[5] [ECF No. 10-2 at 19.]

- At Step Two, she had "the following severe impairments: irritable bowel syndrome, Crohn's disease, migraine headaches, obesity, asthma, depressive disorder and anxiety." [ECF No. 10-2 at 19 (citation omitted).]

- At Step Three, Rhiana J. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [ECF No. 10-2 at 19.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

[5] SSI is not compensable before the application date. *See* 20 C.F.R. § 416.335.

- After Step Three but before Step Four, she had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and can never climb ladders, ropes, or scaffolds. The claimant can work in an environment with a moderate noise intensity (level three or less as set forth in the Department of Labor noise intensity chart). The claimant can never be exposed to pulmonary irritants such as concentrated fumes, odors, dusts, or gasses. The claimant is limited to simple, routine tasks and can occasionally interact with co-workers and supervisors, and never interact with the general public. The claimant requires [an] additional two or three breaks of approximately five minutes each every day in addition to regularly scheduled breaks." [ECF No. 10-2 at 21.]

- At Step Four, there was no past relevant work to consider. [ECF No. 10-2 at 27.]

- At Step Five of the analysis, relying on the testimony of the vocational expert ("VE") and considering Rhiana J.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision. [ECF No. 10-2 at 27-28.]

### III.
#### DISCUSSION

Rhiana J. raises three assignments of error, that the ALJ: (1) did not consider possibly equaling of Listing 11.02 or properly utilize a medical expert to evaluate the listing, (2) did not provide a logical bridge between the evidence of migraines and her RFC conclusion that Rhiana J. was able to sustain work, and (3) failed to properly evaluate Rhiana J.'s subjective symptoms according to Social Security Ruling ("SSR") 16-3p.

### A. Listing 11.02

In acknowledgment that there is no specific listing for migraine headaches, Rhiana J. presents nonbinding decisional, district court authority and "the SSA's nonbinding, internal procedures (called the Program Operations Manual System, or

"POMS") which operationalize (and interpret) the regulation[s]," *Shawn G. v. Berryhill*, No. 1:18-cv-00570-JMS-TAB, 2018 WL 3721393, at *4 (S.D. Ind. Aug. 6, 2018), that the closest analogy to consider in whether migraines equal a listing is a listing for seizures. [ECF No. 12 at 18-20.] The regulations provide that the SSA will consider analogous listings if the claimant has an impairment that is not listed:

> If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

20 C.F.R. § 416.926(b)(2).

In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003). For example, in *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015), the Seventh Circuit found the ALJ's perfunctory analysis to warrant remand when it was coupled with significant evidence of record that arguably supported the listing. *See Kastner v. Astrue*, 697 F.3d 642, 647-48 (7th Cir. 2012) (remanding where the ALJ's cursory listing analysis failed to articulate a rationale for denying benefits when the record supported finding in the claimant's favor)). To demonstrate that an ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify evidence of record that was misstated or ignored which met or equaled the criteria. *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002).

Rhiana J. does not specifically explain how the evidence of migraines equaled Listing 11.02 for seizures by detailing which alternative requirements of the listing were equaled. Listing 11.02 is satisfied generally by epilepsy "documented by a detailed description of a typical seizure and characterized by A, B, C, or D [providing the following additional requirements]:"

A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

1. Physical functioning (see 11.00G3a); or

2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

3. Interacting with others (see 11.00G3b(ii)); or

4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

5. Adapting or managing oneself (see 11.00G3b(iv)); or

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

1. Physical functioning (see 11.00G3a); or

2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

3. Interacting with others (see 11.00G3b(ii)); or

4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.02.

The analogy to seizures in this case is somewhat dubious to begin with, because the Court does not find any objective evidence that substantiated Rhiana J.'s migraines. There was not objective evidence through observation that established the nature or severity of her migraines and there was no objective diagnostic evidence that established the same. The evidence predominantly consisted of Rhiana J.'s reported symptoms. The Seventh Circuit has explained:

> To determine whether an individual is disabled at step 3, an ALJ must follow 20 C.F.R. § 404.1529(d)(3), which describes how the agency decides whether the individual's impairment or combination of impairments are medically equal in severity to an impairment on the list of pre-determined disabling impairments. The regulation explains that the agency will consider whether an individual's symptoms and objective medical evidence are equal in severity to those of a listed impairment. It includes a caveat: "However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding [i.e., objective medical evidence] to raise the severity of your impairment(s) to that of a listed impairment." *Id.*

*Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).[6]

Listing 11.02 also refers to the presence of seizures despite adherence to prescribed medications. Rhiana J. refers, in part, to evidence of migraines prior to

---

[6] The Seventh Circuit in *Curvin* cited to the portion of Code of Federal Regulations ("CFR") that is devoted to consideration of disability in claims for disability insurance benefits. A separate section of the CFR exists for claims for SSI, which is identical in most respects, including an evaluation of disability. Cases may cite to the section for disability insurance benefits, as in *Curvin*. However, unless detailed otherwise by the Court, there is typically a parallel section used to evaluate SSI that establishes the same substantive legal point. *See, e.g.*, 20 C.F.R. § 416.929(d)(3).

her beginning prescribed medication, which is not applicable to an evaluation of the requirements of the listing.  [*See* ECF No. 12 at 20.]

Rhiana J. also cites her own testimony that after starting preventative and abortive medication, she had migraines two to three times a month.  [ECF No. 12 at 21.]  She cites to an example provided in the POMS that migraines are "very similar" to "nonconvulsive" epileptic seizures.  [*See* ECF No. 12 at 19 (citing POMS, http://www.lb7.uscourts.gov/documents/115-cv-14702.pdf (last visited Aug. 12, 2019)).]  As detailed above, Listing 11.02 requires that nonconvulsive, dyscognitive seizures—as opposed to convulsive, tonic-clonic seizures—occur once a week despite prescribed treatment or once every two weeks and be accompanied by marked limitation in one of the specified domains of functioning.  Rhiana J.'s testimony does not establish the frequency at once a week to equal the closest analogous listing as a standalone proposition.  And Rhiana J. does not present any argument, much less supportive evidence that established she had a marked level of interference with functioning in one of the specified domains.  According to *Sims*, Rhiana J. cannot establish that the ALJ's listing conclusion was not supported by substantial evidence without presenting evidence that arguably met or equaled the listing.  309 F.3d at 429-30.  The Court concludes that Rhiana J. has not met her burden here.

Rhiana J.'s remaining listing arguments are significantly undermined by SSR 17-2p, which was not addressed by either party.  SSR 17-2p was published with an effective date of March 27, 2017[7] and rescinded and replaced SSR 96-6p.  SSR 17-2p

---

[7] The Court finds that SSR 17-2 is applicable to the instant suit based on the ALJ's decision being issued after the effective date of the publication of SSR 17-2p.  While Seventh Circuit precedent has

(S.S.A. Mar. 27, 2017), 2017 WL 3928306, at *1. For example, the ruling establishes that it is the ALJ that is responsible for making the determination of medical equivalence based on a preponderance of the evidence:

> At the hearings level or at the [Appeals Council or "AC"] level when the AC issues its own decision, the adjudicator is responsible for the finding of medical equivalence. The adjudicator must base his or her decision about whether the individual's impairment(s) medically equals a listing on the preponderance of the evidence in the record.

*Id*. at *3. The ruling goes on to explain:

> If an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment.

*Id*. at *4. Based on the ruling, Rhiana J.'s arguments are unavailing that the ALJ was not qualified to determine medical equivalence or was required to seek expert guidance before doing so.

---

not specifically addressed the issue, the Court is persuaded by numerous district court decisions that have used the date of the decision in relation to the effective date of the publication to determine if the ruling applies. *See, e.g.*, *Dalecke v. Berryhill*, No. cv 18-11970, 2019 WL 3046559, at *4 (E.D. Mich. June 24, 2019), *report and recommendation adopted*, *Dalecke v. Comm'r of Soc. Sec.*, No. cv 18-11970, 2019 WL 3035523 (E.D. Mich. July 10, 2019) ("As the Commissioner points out, however, SSR 96-6p was superseded by SSR 17-2p which became effective on March 27, 2017, making it applicable to the ALJ's decision in this case, which was issued on March 29, 2017.") (footnote omitted); *see also Goodrich v. Berryhill*, No. 4:18-cv-3-JEM, 2019 WL 459048, at *9 (N.D. Ind. Feb. 5, 2019) ("Because the ALJ's decision in this case was issued on March 8, 2017, before the effective date of rescission, the Court applies SSR 96-6p on this appeal."); *Baker v. Berryhill*, No. 5:17-cv-00921-AKK, 2018 WL 4635741, at *5 n.3 (N.D. Ala. Sept. 27, 2018) (same analysis); *Rivera v. Berryhill*, No. 3:17-cv-109-AWT, 2018 WL 2088009, at *2 n.1 (D. Conn. May 4, 2018) (same analysis). The ruling, in part, specifies the evidentiary requirements and articulation requirements for the ALJ to find medical equivalence when adjudicating at the hearing level. Accordingly, based on the nature of the guidance the ruling provides, the Court believes that the date of the adjudication is the appropriate comparison point to determine applicability.

In the proper case, albeit not this one, there is perhaps some tension with Seventh Circuit precedent, which has generally held that an ALJ might need to seek expert guidance to interpret updated medical evidence. "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where the ALJ "play[ed] doctor" by summarizing the MRI results without subjecting them to professional medical scrutiny)). Rhiana J. asserts that "[t]here are several objective findings throughout the record that require professional analysis." [ECF No. 12 at 21.] However, Rhiana J. does not specifically identify those objective findings that needed expert assistance to be interpreted. As noted above, the Court does not find any objective evidence relevant to Rhiana J.'s migraines. Accordingly, this is not a case that involves the tension between the evidentiary requirements of the listing and Seventh Circuit precedent, where the updated evidence "contained significant, new, and potentially decisive findings . . . ." *See Stage*, 812 F.3d at 1125 (diagnostic report established the need for a total hip replacement); *contrasted also with Goins*, 764 F.3d at 680 (new MRI directly contrasted a consulting physician's rationale that there was no new medical evidence and further established a diagnosis of Chiari I malformation, which provided objective support for disregarded allegations of severe headaches). Rhiana J. has not established the need for expert review of the updated medical evidence relevant to her migraines, which is

predominantly her self-reported symptoms rather than any clinical testing by a medical practitioner.

SSR 17-2p also provides guidance as to the ALJ's articulation requirements when considering medical equivalence. The ruling states:

> If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

SSR 17-2p, 2017 WL 3928306, at *4. Here, the ALJ stated generally that the evidence did not show medical findings that were "equivalent to any listed impairment." [ECF No. 10-2 at 20.] Moreover, the Court does not find tension between the ruling's proclamation that the rationale provided at the later steps can be sufficient for the purposes of review and Seventh Circuit precedent which has explained "it is proper to read the ALJ's decision as a whole, and . . . it would be needless formality to have the ALJ repeat substantially similar factual analyses" throughout the decision. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Thus, the Court will turn to the ALJ's rationale at the later steps for discounting disability as a result of Rhiana J.'s migraines, as the rationale is relevant to Rhiana J.'s other assignments of error.

### B. Migraines

Rhiana J. contends that the ALJ did not provide a logical bridge between the evidence of migraines and the ALJ's conclusion that Rhiana J. was capable of an RFC for sedentary work on a sustained basis. [ECF No. 12 at 4; ECF No. 12 at 25-26.] She also contends that there was "no description in the record documenting [her] having migraines with any less frequency than two days a month." [ECF No. 12 at 25.]

The Seventh Circuit has held that an "ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" Craft, 539 F.3d at 673 (quoting Young v. Barnhart, 362 F.3d 995, 1002 (7th Cir. 2004)). The SSA provides guidance as to what must be considered and articulated, including:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7.

The ALJ did not find that Rhiana J.'s migraines would affect her ability to sustain work within competitive tolerances for breaks, absences, and being on task. The ALJ concluded that the "effect of the claimant's migraine headaches and mental

impairments reasonably limit her to simple, routine tasks with limited interaction with co-workers and the public as defined in the functional capacity assessment. However, the evidence as a whole does not support greater, work preclusive limitations." [ECF No. 10-2 at 24.] The ALJ detailed her RFC conclusions by analyzing the evidence concerning Rhiana J.'s response to treatment and prescribed medication:

> In terms of her migraine headaches, in November 2014, the claimant reported moderate headaches with aggravating factors including bright lights and noise (Exhibit 8F/ 175). In March 2016, the claimant reported that she was able to control her migraines well with medication (Exhibit 14F/4). She stated that she recently experienced an exacerbation when she ran out of medication but overall, she did well in the last several months with prompt relief with the use of Sumatriptan (Id.). She also reported that Belsomra effectively controlled her insomnia and reported no new neurological symptoms (Id.). The record supports that the claimant can work in an environment with a moderate noise intensity.

[ECF No. 10-2 at 26.]

Substantial evidence supports the ALJ's rationale. On November 19, 2014, Rhiana J. reported to her primary care physician that she had been having headaches over the last four months occurring every other day with more severe headaches two to three days a week. [ECF No. 10-18 at 16.] The headaches reportedly were associated with severe symptoms, including "blurred vision, dizziness, photophobia, vertigo and vomiting," and were aggravated by "bright lights and noise." [ECF No. 10-18 at 16.] However, Rhiana J. was taking daily over-the-counter medications at that time. [ECF No. 10-18 at 16.] On July 21, 2015, Rhiana J. described severe migraines occurring three times per week—rated on that day to cause pain at six out of ten without having taken any medication—and was referred to a neurologist for

further treatment. [ECF No. 10-19 at 55.] On August 25, 2015, she reported to the neurologist that she had a four to five-month history of migraines with "no prior history of significant headaches." [ECF No. 10-19 at 51.] She reported that the migraines were occurring two to three times a week and she had been "using Excedrin Migraine with little benefit." [ECF No. 10-19 at 51.] A CT scan was interpreted as "within normal limits" when checking for more severe neurological conditions and an acute etiology. [ECF No. 10-19 at 51.]

However, Rhiana J.'s migraines responded well to treatment with the neurologist. At the first follow-up visit on September 29, 2015, Rhiana J. reported "she's had no significant headaches since she was started on Trokendi. She tolerates the medication [well]. She has had no cognitive changes, distal paresthesias or other adverse effects. She uses Imitrex infrequently for acute headaches." [ECF No. 10-19 at 46.] On March 29, 2016, the neurologist's treatment notes indicated the following:

> The patient reports her migraines are well controlled on Trokendi. She [has] recently had an exacerbation of headaches that [sic] she ran out of the medication[,] but overall she has done well in the last several months[.] She gets prompt relief with the use of sumatriptan.
>
> She's had no new neurologic symptoms.
>
> She reports of Belsomra was effective for treatment of insomnia and requested a refill.

[ECF No. 10-19 at 43.] The neurologist's assessment was "[m]igraine without aura and without status migrainosus, [or in other words, the migraines were] not [i]ntractable." [ECF No. 10-19 at 44.] The ALJ's analysis of the evidence concerning Rhiana J.'s response to treatment and prescribed medications provides the Court

with the logical bridge between the evidence and the ALJ's RFC conclusion that Rhiana J.'s migraines did not affect her ability to sustain work.

Along with her listing argument, Rhiana J. cites Seventh Circuit precedent that an ALJ may not ignore evidence that contradicts her ultimate conclusion. [ECF No. 12 at 17.] "We have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). The ALJ has a duty to "acknowledge potentially dispositive evidence" because the "ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires [her] to do." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985).

The ALJ did not confront evidence that arguably contradicted her rationale that Rhiana J.'s migraines were well controlled with medication. On April 4, 2016, Rhiana J. was diagnosed by her primary care provider with essential hypertension after she was recorded to have elevated blood pressure, including at a recent emergency room visit for abdominal pain. [ECF No. 10-20 at 61.] During the visit, Rhiana J. reported "that she has been having more [headaches] than normal." [ECF

No. 10-20 at 61 (which was reported despite the fact she was "on migraine medication already").]

The Court does not conclude that the vague report was potentially dispositive evidence, such that remand would be required for the ALJ to specifically consider the evidence. The report does not provide any evidence of the actual frequency or the severity of the headaches. It does not establish if the headaches were similar to her previous migraines or more akin to generalized headaches that might be a symptom of hypertension. The record also does not establish how Rhiana J.'s hypertension or reported headaches responded to treatment after she was diagnosed and started on medication. There is also no evidence that increased headaches necessitated that Rhiana J. return to a specialist for treatment or that her migraine medications were adjusted.

Moreover, no physician opined greater limitations—as a result of Rhiana J.'s migraines—than the ALJ found were supported by the record. In upholding an ALJ's RFC finding in *Rice*, the Seventh Circuit observed, "[m]ore importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ." 384 F.3d at 370.

Furthermore, the Court does not agree with Rhiana J. that the Seventh Circuit decision in *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) is "on point here." [ECF No. 12 at 26.] In *Moon*, the Seventh Circuit remanded after detailing that the ALJ's RFC finding rested on: (1) a reading of a treatment note that Moon had denied a current headache as mistakenly establishing that she denied ever having headaches,

(2) the ALJ's lay opinion that normal diagnostic imaging undermined Moon's migraines rather than simply excluding more acute and potentially serious causes of the symptoms, and (3) a credibility finding that amounted to the ALJ splitting hairs to find contradictions. *Moon*, 763 F.3d at 721-22. Here, the ALJ did not rely on objective medical evidence to discount the severity of Rhiana J.'s migraines. Furthermore, as detailed above, the ALJ supported her conclusions with specific reference to the evidence of record describing Rhiana J.'s positive response to treatment and the use of prescribed medication, which included definitive statements that Rhiana J. had not experienced any serious headaches while on the medications and that she got prompt and effective relief when taking them.

Accordingly, the Court finds that the ALJ's RFC finding concerning Rhiana J.'s migraines was supported by substantial evidence. The Court also finds that the ALJ's written decision satisfied both the SSA's and the Seventh Circuit's articulation standards at Step Three and in assessment of Rhiana J.'s RFC.

### C. Subjective Symptom Evaluation

Rhiana J. also takes issue with the ALJ's evaluation of Rhiana J.'s subjective symptoms, including her pain related to her Crohn's disease and migraines. [ECF No. 12 at 30.]

As noted in the standard of review section, an ALJ's credibility evaluation is accorded considerable deference. Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v.*

*Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). "We will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing *Arnold v. Barnhart,* 473 F.3d 816, 823 (7th Cir. 2007)).

On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id*. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). Still, the standard remains whether the ALJ's assessment was patently wrong.

The ruling specifies that the SSA uses "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," but continues to utilize the regulatory factors relevant to a claimant's symptoms, including daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has

taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8; 20 C.F.R. § 416.929(c)(3). The ruling clarifies that the SSA considers "other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *8.

The Court does not find that the ALJ's subjective symptom evaluation was patently wrong. As detailed above, relevant to Rhiana J.'s migraines, the ALJ provided specific citation to substantial evidence of record that supported that Rhiana J.'s severe headaches responded favorably to treatment and medication. The ALJ did not rely on objective evidence to discredit Rhiana J.'s pain complaints, but rather focused on the other evidence of record, particularly Rhiana J.'s own statements to her treating specialist.

Similarly, the ALJ evaluated Rhiana J.'s pain complaints related to her Crohn's disease and irritable bowel syndrome. The ALJ noted that Rhiana J. had a long history of relevant issues and had treated with a specialist, a gastroenterologist. [ECF No. 10-2 at 23.] However, the ALJ cited the specialist's treatment notes as indicating that Rhiana J.'s "gastrointestinal symptoms improved after abdominal surgery; the onset of diarrhea and abdominal pain was gradual without urgency or nausea." [ECF No. 10-2 at 23.] The ALJ cited to Rhiana J.'s description of the pain in follow-up visits as "mild, stabbing" and "moderate crampy," and concluded that "[t]his description of pain is not fully consistent with the pain levels that the claimant

described in her testimony." [ECF No. 10-2 at 23.] Inconsistencies with the severity of symptoms reported at the hearing and those reported while seeking treatment or the failure to regularly seek treatment for those symptoms can support an ALJ's credibility finding. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005). The ALJ also noted that the record did not indicate that Rhiana J. returned for specialist treatment after the August 2015 visit when she reported moderate cramping. [ECF No. 10-2 at 25.]

The record provided substantial evidentiary support for the ALJ's specific contentions. On August 27, 2013, well before Rhiana J. applied for benefits, she underwent surgery, an exploratory laparotomy, resection of the terminal ileum, and partial right hemicolectomy. [ECF No. 10-12 at 25.] On October 22, 2013, Rhiana J. reported gradual improvement and "Crohn's Disease [was] described as mild." [ECF No. 10-12 at 30 ("The symptoms are aggravated by walking and motion.").] On August 21, 2015, after Rhiana J. had applied for benefits, she described her abdominal pain as "moderate crampy." [ECF No. 10-19 at 17.] The record does not show that Rhiana J. had further specialized treatment after that August 2015 visit.

The ALJ further noted that the record suggested that some of Rhiana J.'s symptoms were related to diet and medication noncompliance. [ECF No. 10-2 at 23.] An ALJ can reasonably determine that a claimant's allegations are not credible when the claimant fails to follow treatment recommendations. *See Dixon v. Massanari*, 270 F.3d 1171, 1179 (7th Cir. 2001) (discounting evidence of elevated blood sugar levels, in part, because of the claimant's failure to follow dietary recommendations); *see also*

*Craft*, 539 F.3d at 679 (noting that "failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure"). On January 7, 2015, Rhiana J.'s treating specialist noted that Rhiana J. "unfortunately has dietary indiscretions, she ate McDonalds' last night, or she may eat steaks and pork chops that lead to likely some of her diarrhea." [ECF No. 10-12 at 32.] She also reported that she knew her Questran worked and had results with the medication, but she did not like the texture, which apparently limited her use. [ECF No. 10-12 at 32.]

The ALJ did not completely discredit Rhiana J.'s gastrointestinal symptoms. Rather, the ALJ credited the need for two to three five-minute breaks in addition to regularly scheduled breaks. The ALJ also reduced Rhiana J.'s RFC to the sedentary exertional level, in part, based on the VE's "testimony that the sedentary class of jobs would provide a work-environment that would allow restroom access." [ECF No. 10-2 at 23-24.] The VE testified about the competitive tolerance for unscheduled breaks in the type of work that the ALJ found Rhiana J. capable of performing:

> In clerical work, it would be a more liberal policy than if they were in -- on a production line where someone had to take their place. My experience has been, in clerical work, that a couple of five[-]minute breaks, bathroom breaks in addition to the usual morning, afternoon, and lunch break, are reasonably tolerated by employers. And bathrooms are usually close by, so it doesn't take a long time to get to them in clerical situations.

[ECF No. 10-2 at 54.]

The Court does not find that the ALJ's reasons for discrediting Rhiana J.'s symptoms were unsupported by the record. Furthermore, the ALJ did not supply

reasons that were illogical or problematic according to precedent. Accordingly, the Court does not conclude that the ALJ's subjective symptom evaluation was patently wrong.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Rhiana J. to reverse the ALJ's decision that Rhiana J. was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 9/4/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com